IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| WALTER A. VAUGHT, ) | Case No. 1:18-cv-2153 |
| ) | |
| Plaintiff, ) | JUDGE BENITA Y. PEARSON |
| ) | |
| v. ) | MAGISTRATE JUDGE |
| ) | THOMAS M. PARKER |
| COMMISSIONER OF ) | |
| SOCIAL SECURITY, ) | |
| ) | **REPORT & RECOMMENDATION** |
| Defendant. ) | |

**I.     Introduction**

Plaintiff Walter A. Vaught seeks judicial review of the final decision of the Commissioner of Social Security, denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XIV of the Social Security Act.  This matter is before me pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and Local Rule 72.2(b).  Because the ALJ failed to apply proper legal standards in evaluating the state agency consultants' opinions, I recommend that the Commissioner's final decision denying Vaught's application for disability insurance benefits and supplemental security income be VACATED and that Vaught's case be REMANDED for further consideration.

II.     **Procedural History**

On August 31, 2015, Vaught applied for DIB and SSI. (Tr. 239-250).[1] Vaught alleged that he became disabled on October 30, 2014[2], due to hearing loss.[3] (Tr. 11, 33, 80, 110-11, 240, 244). The Social Security Administration denied Vaught's applications initially and upon reconsideration. (Tr. 80-143). Vaught requested an administrative hearing. (Tr. 170-72). ALJ Joseph Vallowe heard Vaught's case on October 2, 2017, and denied the claims in a February 2, 2018, decision. (Tr. 8-79). On July 26, 2018, the Appeals Council denied further review, rendering the ALJ's decision the final decision of the Commissioner. (Tr. 1-5). On September 19, 2018, Vaught filed a complaint to seek judicial review of the Commissioner's decision. ECF Doc. 1.

III.    **Evidence**

   A.   **Personal, Educational and Vocational Evidence**

Vaught was born on May 30, 1960, and he was 50 years old on the alleged onset date. (Tr. 244). Vaught had a high school education. (Tr. 19). Vaught could not perform his prior work as a molding press tender. (Tr. 19).

   B.   **Relevant Medical and Opinion Evidence**

Because Vaught raises only a single argument in this action – relating to the ALJ's handling of opinion evidence concerning his hearing limitations – it is unnecessary to summarize the medical records concerning his other claimed disabling conditions, including those the ALJ found to be severe.

---

[1] The administrative transcript is in ECF Doc. 13.
[2] Vaught originally alleged an onset date of August 15, 2010, but he later amended the alleged onset date to October 30, 2014, at the ALJ hearing. (Tr. 11, 33).
[3] Vaught also alleged that he became disabled on August 15, 2010, due to "uncontrolled diabetes, uncontrolled blood pressure, cannot read, cannot write, . . . cannot comprehend, high cholesterol, lightheaded, low back problems, [and] leg pain/cramps." (Tr. 80, 110-11, 240, 244). But he does not raise before this court any issue related to these other alleged impairments.

2

On June 25, 2015, Karen Kantzes, Au.D., conducted a basic comprehensive auditory evaluation, which revealed permanent, severe high frequency sensorineural hearing loss in both ears. (Tr. 487). Dr. Kantzes said that, "without hearing aids[, Vaught would] have difficulty understanding conversational speech, esp[ecially] high frequency sounds." (Tr. 487). Vaught also told Dr. Kantzes that he felt "off balance" when he stood up, and that he had constant tinnitus in both ears. (Tr. 487). Dr. Kantzes noted that Vaught's hearing loss was related to his "[h]istory of noise exposure (heavy machinery, inconsistent hearing protection use)." (Tr. 490). Dr. Kantzes determined that Vaught had good word recognition notwithstanding his hearing loss and recommended that he get hearing aids and recheck his hearing every one to two years. (Tr. 490).

Vaught's extensive treatment notes indicate that he rarely mentioned his hearing issues to his general physicians, whose treatment typically focused on his other medical issues: diabetes, heart, and blood pressure problems. See generally (Tr. 395-484, 498-504, 519-658, 670-87, 727-802, 840-44). Nevertheless, on August 26 and September 23, 2015, Vaught told Martin Dufour, M.D., that he had hearing loss and tinnitus. (Tr. 399, 402, 448, 458, 641, 645). On October 21, 2015, Vaught told Social Security Administration case worker Tanika Lawrence that he last had his hearing checked in August 2015, and that he was getting new hearing aids. (Tr. 324). Further, during his December 2015 psychological evaluation, Vaught told Thomas Evans, Ph.D., that he had "20% hearing loss in each ear and he [wore] hearing aids." (Tr. 493).

On November 9, 2015, state agency consultant Elaine Lewis, M.D., evaluated Vaught's medical impairments. (Tr. 86, 88-89, 92-93). Dr. Lewis opined that Vaught's hearing loss was a severe impairment, and that he needed to "[a]void situations where fine hearing is necessary." (Tr. 86, 88). Dr. Lewis stated that Vaught needed to "[a]void even moderate exposure" to noise. (Tr. 89). Notwithstanding Vaught's fine-hearing impairment, Dr. Lewis also noted that Vaught

3

could "hear and understand normal conversation." (Tr. 93). On April 4, 2016, Michael Lehv, MD, concurred with Dr. Lewis' opinion. (Tr. 117, 120-21, 125).

        **C.**        **Relevant Testimonial Evidence**

Vaught testified at the ALJ hearing. (Tr. 34-71). Vaught testified that he did not wear his hearing aids to the ALJ hearing, but he could hear the ALJ. (Tr. 34, 47). He explained that his hearing loss was not "100 percent loss," and that it "comes and goes." (Tr. 34). Vaught said that he wore his hearing aids most days, and that he was careful to hear the ALJ at the ALJ hearing because he was "paranoid that [he was] going to say the wrong thing." (Tr. 48). Vaught stated that his doctors had not recommended any additional treatment for his hearing loss, other than hearing aids. (Tr. 48). With his hearing aids, Vaught heard a "buzz" in the background. (Tr. 48). On examination by his attorney, Vaught testified that he had difficulty hearing "loud pitch like humming of motors and stuff like that," and that his ability to hear those things got worse when the background noise was loud. (Tr. 68).

Ted Macy, a vocational expert ("VE"), also testified at the ALJ hearing. (Tr. 71-77). The ALJ asked the VE whether a hypothetical individual with Vaught's experience, age, and education could perform work if he was limited to medium exertion, as well as "occasional fine hearing and . . . no great[er] than loud noise; and simple, routine tasks, but no fast-paced or high-production quota work; limited to simple work-related decisions." (Tr. 73). The VE testified that such an individual could work as a laundry worker, packager; or stock selector. (Tr. 74). The ALJ asked if a hypothetical individual could work if he was limited to light exertion with the following restrictions:

> no requirement to stand or walk more than 20 minutes at a time, but it's still overall a light job meaning three-quarters of the time on your feet and occasional bilateral foot controls; frequent climbing ramps and stairs; no climbing ropes, ladders, and scaffolds; frequent balance; occasional stoop, kneel, crouch, crawl; keep the same hearing restriction, occasional fine hearing; no exposure to hazards such as a unprotected heights, moving mechanical parts, operating a motor

4

>vehicle commercially; no more than moderate noise in this hypothetical; and the mental restrictions remain the same.

(Tr. 75). The VE testified that such an individual could work as a wire worker, electronics worker; or food service worker. (Tr. 75-76).

## IV. The ALJ's Decision

The ALJ's February 2, 2018, decision found that Vaught was not disabled and denied his applications for DIB and SSI. (Tr. 11-20). The ALJ determined that Vaught's hearing loss was a severe impairment, but his impairments did not meet or medically equal the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 – including Listing 2.10 (hearing loss not treated with cochlear implantation). (Tr. 14). The ALJ determined that Vaught had the residual functional capacity ("RFC") to perform medium work, except that:

>he cannot perform work that requires [] fine hearing. The claimant can never work at unprotected heights or moving mechanical parts. The claimant cannot operate motor vehicles and cannot work around loud noise. He is limited to simple and routine tasks but no fast paced or high production quota work. The claimant is limited to simple work-related decisions.

(Tr. 16).

In assessing Vaught's RFC, the ALJ explicitly stated that he "considered all symptoms" in light of the medical and other evidence in the record. (Tr. 16). The ALJ specifically noted that Vaught "w[ore] hearing aids most of the time but still ha[d] a background buzz while using them." (Tr. 17). The ALJ stated that Vaught's hearing issues did not warrant further restrictions, beyond the no-fine-hearing and background-noise limitations included in the RFC, because he could hear well with hearing aids and appeared to hear fine during the hearing despite not wearing his hearing aids. (Tr. 17). The ALJ also stated that the gave "great weight" to Dr. Lewis' and Dr. Lehv's opinions, including the "no fine hearing and limitations to exposure to noise." (Tr. 18). The ALJ explained that Dr. Lewis's and Dr. Lehv's opinions were "generally

5

consistent with the record, including . . . [Vaught's] otherwise general lack of objective signs of functional limitations." (Tr. 18).

Because the ALJ found that Vaught limitations that reduced his ability to perform the full range of medium work, he relied on the VE's testimony to determine whether Vaught could work. (Tr. 19-20). Based on the VE's testimony, the ALJ found that Vaught could work as a laundry worker, packager, and stock selector. (Tr. 20). In light of his findings, the ALJ determined that Vaught was not disabled from October 30, 2014, through the ate of his decision and denied Vaught's applications for DIB and SSI. (Tr. 20).

## V.     Law & Analysis

### A.     Standard of Review

The court reviews the Commissioner's final decision to determine whether it was supported by substantial evidence and whether proper legal standards were applied. 42 U.S.C. §§ 405(g), 1383(c)(3); *Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003). Substantial evidence is any relevant evidence, greater than a scintilla, that a reasonable person would accept as adequate to support a conclusion. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

Under this standard, the court cannot decide the facts anew, evaluate credibility, or re weigh the evidence. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003). If supported by substantial evidence and reasonably drawn from the record, the Commissioner's factual findings are conclusive – even if this court might reach a different conclusion or if the evidence could have supported a different conclusion. 42 U.S.C. §§ 405(g), 1383(c)(3); *see also Elam*, 348 F.3d at 125 ("The decision must be affirmed if . . . supported by substantial evidence, even if that evidence could support a contrary decision."); *Rogers*, 486 F.3d at 241 ("[I]t is not necessary that this court agree with the Commissioner's finding, as long as it is substantially

supported in the record."). This is so because the Commissioner enjoys a "zone of choice" within which to decide cases without being second-guessed by a court. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).

Even if supported by substantial evidence, however, the court will not uphold the Commissioner's decision when the Commissioner failed to apply proper legal standards, unless the error was harmless. *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("[A] decision . . . will not be upheld [when] the SSA fails to follow its own regulations and [when] that error prejudices a claimant on the merits or deprives the claimant of a substantial right."); *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 654 (6th Cir. 2009) ("Generally, . . . we review decisions of administrative agencies for harmless error."). Furthermore, the court will not uphold a decision, when the Commissioner's reasoning does "not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting Sarchet v. Charter, 78 F.3d 305, 307 (7th Cir. 1996)); *accord Shrader v. Astrue*, No. 11-13000, 2012 U.S. Dist. LEXIS 157595 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, No. 1:10-CV-734, 2011 U.S. Dist. LEXIS 141342 (S.D. Ohio Nov. 15, 2011); *Gilliams v. Astrue*, No. 2:10 CV 017, 2010 U.S. Dist. LEXIS 72346 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, No. 1:09-CV-19822010, 2010 U.S. Dist. LEXIS 75321 (N.D. Ohio July 9, 2010). Requiring an accurate and logical bridge ensures that a claimant will understand the ALJ's reasoning.

The Social Security regulations outline a five-step process the ALJ must use to determine whether a claimant is entitled to benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals

7

any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform his past relevant work in light of his RFC; and (5) if not, whether, based on the claimant's age, education, and work experience, he can perform other work found in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642-43 (6th Cir. 2006).  Although it is the Commissioner's obligation to produce evidence at Step Five, the claimant bears the ultimate burden to produce sufficient evidence to prove that he is disabled and, thus, entitled to benefits.  20 C.F.R. §§ 404.1512(a), 416.912(a).

### B. The Parties' Arguments

Vaught argues that the ALJ failed to apply proper legal standards in assessing his RFC because the ALJ did not explain inconsistencies between the limitations in the RFC and limitations in medical opinions that were given great weight.  ECF Doc. 16 at 1, 4-7.  Specifically, Vaught asserts that the ALJ was required to explain why the RFC limited him from working "around loud noise," when the ALJ also gave great weight to Dr. Lewis' and Dr. Lehv's opinions, which said he needed to "[a]void even moderate exposure" to noise.  ECF Doc. 16 at 5-6; *see also* (Tr. 16, 89, 121).  Further, Vaught contends that the ALJ's ultimate disability finding is not supported by substantial evidence because the VE was never asked about noise exposure. ECF Doc. 16 at 7.  Finally, Vaught argues that the ALJ's error was not harmless because all the jobs that the ALJ found Vaught could perform required a moderate or higher noise tolerance. ECF Doc. 16 at 6-7.

The Commissioner responds that the ALJ was not required to adopt all of the limitations in opinions, even those given great weight.  ECF Doc. 18 at 6.  The Commissioner argues that the ALJ "properly formulated [Vaught's] RFC based on the record as a whole," and explicitly considered and accounted for his bilateral hearing loss.  ECF Doc. 18 at 7.  The Commissioner

8

asserts that the ALJ adequately limited Vaught to jobs that did not require fine hearing or exposure to loud noises, and that Vaught failed to produce any evidence supporting additional functional limitations. ECF Doc. 18 at 7.

In his reply brief, Vaught argues that the opinions limiting him to moderate noise exposure were "additional function limitations . . . beyond the ALJ's limitation to loud noise." ECF Doc. 19 at 1. Vaught asserts that his exposure limitation was intended to "prevent further hearing loss," and that he testified that loud environment, high pitches, and humming motor sounds bothered him. ECF Doc. 19 at 1.

### C. The Medical Opinion Evidence and RFC

At Step Four of the sequential analysis, the ALJ must determine a claimant's RFC by considering all relevant medical and other evidence. 20 C.F.R. §§ 404.1520(e), 416.920(e). The RFC is an assessment of a claimant's ability to do work despite his impairments. *Walton v. Astrue*, 773 F. Supp. 2d 742, 747 (N.D. Ohio 2011) (citing 20 C.F.R. § 404.1545(a)(1) and SSR 96-8p, 1996 SSR LEXIS 5 (July 2, 1996)). "In assessing RFC, the [ALJ] must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8p, 1996 SSR LEXIS 5. Relevant evidence includes a claimant's medical history, medical signs, laboratory findings, and statements about how the symptoms affect the claimant. 20 C.F.R. §§ 404.1529(a), 416.929(a); *see also* SSR 96-8p, 1996 SSR LEXIS 5.

In weighing the medical evidence, an ALJ must give a treating physician's opinion controlling weight, unless the ALJ articulates good reasons for discrediting that opinion. *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013); *see also Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 506-07 (unpublished) (noting that two or three visits "often will not suffice for an ongoing treatment relationship" required for a physician to be a treating source). On the other hand, "opinions from nontreating and nonexamining sources are

9

never assessed for 'controlling weight.'" *Gayheart*, 710 F.3d at 376. Instead, an ALJ must weigh such opinions based on: (1) the examining relationship; (2) the degree to which supporting explanations consider pertinent evidence; (3) the opinion's consistency with the record as a whole; (4) the physician's specialization related to the medical issues discussed; and (5) any other factors that tend to support or contradict the medical opinion. *Id.*; 20 C.F.R. §§ 404.1527(c), 416.927(c). Generally, an examining physician's opinion is due more weight than a nonexamining physician's opinion. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Gayheart*, 710 F.3d at 375. An ALJ does not need to articulate good reasons for rejecting a nontreating or nonexamining opinion. *See Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007) (declining to address whether an ALJ erred in failing to give good reasons for not accepting non-treating physicians' opinions).

"Even [when] an ALJ provides 'great weight' to an opinion, there is no requirement that an ALJ adopt [a medical source's] limitations wholesale." *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015) (unpublished). So long as the ALJ's RFC determination considered the entire record, the ALJ is permitted to make necessary decisions about which medical findings to credit and which to reject in determining the claimant's RFC. *See Justice v. Comm'r of Soc. Sec.*, 515 F. App'x 583, 587 (6th Cir. 2013) (unpublished) ("The ALJ parsed the medical reports and made necessary decisions about which medical findings to credit, and which to reject. Contrary to [the claimant's] contention, the ALJ had the authority to make these determinations."). However, an ALJ improperly "cherry-picks" evidence when his decision does not recognize a conflict between the functional limitations described in a medical opinion and the ALJ's RFC finding, and explain why he chose to credit one portion over another. *See Rogers v. Comm'r of Soc. Sec.*, No. 5:17-cv-1087, 2018 U.S. Dist. LEXIS 68715 *44 (N.D. Ohio 2018) (citing *Minor v. Comm'r of Soc. Sec.*, 513 F. App'x 417, 435 (6th Cir. 2013)); *see also Fleischer*

10

*v. Astrue*, 774 F. Supp. 2d 875, 881 (N.D. Ohio 2011) (stating that, if a medical source's opinion contradicts the ALJ's RFC finding, the ALJ must explain why he did not include the limitation in his RFC determination).  Nonetheless, the ALJ need not incorporate his explanation into a single, tidy paragraph, so long as his discussion as a whole is sufficiently specific enough for a subsequent reviewer to understand his reasons for crediting one limitation over another.  *See Buckhannon ex rel. J.H. v. Astrue*, 368 F. App'x 674, 678–89 ("There is no requirement of such tidy packaging, however; we read the ALJ's decision as a whole and with common sense."); *cf. Gayheart*, 710 F.3d at 376 (stating that an ALJ must provide an explanation "sufficiently specific to make clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight.")

      The ALJ failed to apply proper legal standards in evaluating the medical opinion evidence and assessing Vaught's RFC.  42 U.S.C. §§ 405(g), 1383(c)(3); *Elam*, 348 F.3d at 125. The ALJ stated that he gave the state agency consultants' opinions great weight, but he never explained why he rejected their opinion that Vaught was required to avoid exposure to even moderate levels of noise.  (Tr. 18).  In fact, the ALJ never mentioned that limitation at all.  (Tr. 18).  Instead, the ALJ merely said that the state agency consultants' opinions "include[ed] . . . limitations to exposure to noise."  (Tr. 18).  That's it.  The ALJ did not even mention what the limitations were.  He merely acknowledged the limitations were in the opinions, said he gave the opinions great weight, and moved on without incorporating the limitations into the RFC.  This type of analysis leaves one wondering: "what does 'great weight' mean?"  But such questions might send us down a rabbit hole beyond the scope of this Court's review.[4]  More simply put, if

---

[4] A review of the social security statutes, regulations, POMS, and HALLEX leave the court without a legislative or administrative definition of "great weight."  In the absence of such a definition, one might be well-reasoned to assume that an opinion's receipt of "great weight" means that the limitations in the opinion should receive some deference unless otherwise stated.

the ALJ wished to credit part of the state agency consultants' opinions but reject other parts, he needed to do more. *See Rogers*, 2018 U.S. Dist. LEXIS 68715 at *44; *Minor*, 513 F. App'x at 435; *Fleischer*, 774 F. Supp. 2d at 881.

Even if the Court were to read the ALJ's opinion so broadly[5] that it concluded the ALJ's reasons for rejecting Vaught's subjective complaints about his hearing limitations were also reasons for rejecting the limitations in the state agency consultants' opinions[6], the ALJ's conclusion is nonetheless not supported by substantial evidence. Here, the ALJ stated that he did not believe that Vaught required background-noise limitations beyond those included in his RFC finding because he believed Vaught could hear well with hearing aids and Vaught "appeared to hear fine during the hearing despite not wearing hearing aids." (Tr. 17). This *sit-and-hear* jurisprudence is similar to the "sit-and-squirm" jurisprudence that the Sixth Circuit rebuffed in *Weaver v. Sec'y of Health and Hum. Servs.*, 722 F.2d 310, 312 (6th Cir. 1983) (recognizing the thoroughly discredited nature of the "sit-and-squirm" test and holding that an ALJ must cite some other evidence for denying a claim for pain in addition to personal observation). Further, the ALJ's opinion highlights the dangers of making a medical judgment based on personal observations – something the ALJ may not do. The ALJ's medical judgment here demonstrates a fundamental misunderstanding of the issue. Being able to hear someone speaking in an ALJ hearing room is completely different than being able to adequately discern speech (even while wearing hearing aids) in a moderately noisy environment. The evidence in the record – contrary to the ALJ's medical judgment – indicates that *the presence of any more than moderate noise* would render Vaught unable to hear adequately. (Tr. 68, 86-89, 487). Thus, the ALJ's opinion is not supported by substantial evidence and does not build a logical bridge between the record

---

[5] The Court should not.
[6] They were not.

evidence and the RFC finding.  *Elam*, 348 F.3d at 125; *Rogers*, 486 F.3d at 241; 42 U.S.C. §§ 405(g), 1383(c)(3); *Fleischer*, 774 F. Supp. 2d at 877.

Accordingly, I recommend that the Court vacate the ALJ's decision denying Vaught's claim and remand for further consideration of Vaught's RFC.

### D. Disability Determination

At the final step of the sequential analysis, the burden shifts to the Commissioner to produce evidence as to whether the claimant can perform a significant number of jobs in the national economy.  *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 238 (6th Cir. 2002); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  An ALJ may determine that a claimant has the ability to adjust to other work in the national economy by relying on a vocational expert's testimony that the claimant has the ability to perform specific jobs.  *Howard*, 276 F.3d at 238.  A vocational expert's testimony in response to a hypothetical question is substantial evidence when the question accurately portrays the claimant's RFC.  *See id.* (stating that "substantial evidence may be produced through reliance on the testimony of a vocational expert (VE) in response to a 'hypothetical' question, but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments'"); *see also Lee v. Comm'r of Soc. Sec.*, 529 F. App'x 706, 715 (6th Cir. 2013) (unpublished) (stating that the ALJ's hypothetical question must "accurately portray[] a claimant's vocational abilities and limitations").  "An ALJ is only required to incorporate into a hypothetical question those limitations he finds credible."  *Lee*, 529 F. App'x at 715; s*ee also Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990) ("If the hypothetical question has support in the record, it need not reflect the claimant's unsubstantiated complaints.").

As a technical matter, the ALJ applied proper legal standards and reached a decision supported by substantial evidence in finding that Vaught was not disabled at Step Five.  42

13

U.S.C. §§ 405(g), 1383(c)(3); *Elam*, 348 F.3d at 125. Here, the ALJ was not required to find that Vaught was disabled based on the limitations Vaught promotes in his merits brief, because the ALJ did not find those limitations credible and did not incorporate them into his RFC finding. *Howard*, 276 F.3d at 238; *Lee*, 529 F. App'x at 716; *Blacha*, 927 F.2d at 231; (Tr. 16-20). Further, because the ALJ's hypothetical questions to the VE accurately represented the ALJ's RFC finding, the VE's testimony – that Vaught could work as a laundry worker, packager, or stock selector – was substantial evidence supporting the ALJ's finding that Vaught was not disabled. *Howard*, 276 F.3d at 238; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); (Tr. 16, 73-74). In light of these findings, I would normally recommend that the Court affirm the ALJ's Step Five analysis. Nevertheless, the ALJ might conclude, upon remand, that additional limitations must be incorporated in Vaught's RFC upon proper consideration of the state agency consultant's opinions. Because the ALJ did not incorporate into his hypothetical question to the VE a limitation requiring Vaught to avoid exposure even moderate noise and because the VE did not indicate whether any of the jobs identified could be performed without exposure to even moderate noise levels, additional VE testimony may be necessary upon remand.

**VI.     Recommendation**

Because the ALJ failed to apply proper legal standards in evaluating the state agency consultants' opinions, I recommend that the Commissioner's final decision denying Vaught's application for disability insurance benefits and supplemental security income be VACATED and that Vaught's case be REMANDED for further consideration.

Dated: August 28, 2019

Thomas M. Parker
United States Magistrate Judge

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn,* 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986).

15